IN THE MATTER OF THE APPLICATION OF JOHN LAMPERT TO BE DISCHARGED FROM CUSTODY ON HABEAS CORPUS.

*Arrest of a party under an execution, while returning from attendance at a court —remedy of, is by a motion and not by a writ of habeas corpus—a party must be in actual custody to authorize such a writ to issue.*

One Lampert, while returning home, after attending at the Marine Court, in a proceeding to which he was a party, was arrested upon an execution against his person issued upon a judgment recovered against him in that court, by one Faendler. After he had given bail for the limits, and been discharged from custody, a writ of *habeas corpus* was issued to the sheriff, commanding him to bring Lampert before one of the justices of the Supreme Court, to which the sheriff made a return that he was unable to obey the writ, for the reason that Lampert was not in his actual custody. Upon the hearing, at which Lampert voluntarily appeared, an order was made directing that Lampert be released from the execution and discharged from all imprisonment in pursuance thereof.

*Held*, that Lampert was not at the time of the issuing of the writ imprisoned by the sheriff, nor was his bond for the limits such a restraint by that officer as authorized a resort to the writ of *habeas corpus*.

That the writ could not be issued to inquire into a mere matter of temporary privilege by which the applicant was exempted from arrest, but that his remedy for a violation of such privilege was by an *ex parte* application to the court, before which he was attending, or to the court out of which the process had issued.

That the proceedings should have been dismissed with costs.

APPEAL by Charles Faendler, from an order discharging the relator, John Lampert, on a *habeas corpus*, and by Henry Wehle, said Faendler's attorney, from an order charging him personally with the costs of the said application; and also from so much of another order in the same proceedings as so modifies the taxation of costs thereon, as to allow the sheriff the sum of $12.75 as fees upon the arrest.

*Charles Wehle*, for the appellants.

*George W. Wilson* and *George Behrens*, for the relator, respondent.

BARRETT, J.:

While Lampert was returning home, after attendance at the Marine Court, in a proceeding to which he was a party, he was arrested upon an execution against his person, issued out of the same court, at the suit of one Faendler.

He thereupon gave bail for the limits, and was discharged. Subsequently a writ of *habeas corpus* was issued to the sheriff, commanding him to bring Lampert before one of the justices of this court at chambers. The sheriff made return, in substance, that

he was unable to obey the writ, for the reason that Lampert was not in his actual custody, being on the limits. Instead of a dismissal of the proceeding following this return, Lampert, who appears to have attended *voluntarily* before the justice, filed a traverse, not denying the facts set up by the sheriff, but giving a history of the arrest, and declaring that he was taken, "notwithstanding all his objections and protests." He fails, however, in this traverse, to disclose the nature of these objections and protests, nor does he state *therein* that he ever claimed his privilege. Upon this, proofs were taken before a referee, who reported, and ultimately the court made the order appealed from, directing that Lampert be "released *from the execution*," and that the sheriff discharge him from "imprisonment *in pursuance of said execution*, surrender of bail, or otherwise, as the case may be, *resulting from said execution*." This order, we think, was erroneous. The relator has mistaken his remedy, and the office of a writ of *habeas corpus*. He was not imprisoned by the sheriff, nor was his bond for the limits such a restraint by that officer as authorized a resort to the writ. (*Dodge's Case*, 6 Mart. [La.], 569.)

The same has been held as to persons discharged on bail generally. They will not be considered as restrained of their liberty, so as to be entitled to a writ of *habeas corpus*, directed to their bail. (1 Bouvier's Law Dictionary, 574; 3 Yeates, 263; 1 Serg. & R., 356.) It is true that close confinement is unnecessary; that even words may constitute an imprisonment, if the party be thereby put in subjection; that the place is immaterial, and may be a public highway, as well as a house or prison; in fact, that the office of the writ is to remove all unlawful restraints upon personal freedom. But to remove them, how? Naturally and primarily, by the production of the body. That is what the statute demands, except in cases of sickness or infirmity. (2 R. S., 564–566, §§ 27, 33.) Mr. Hurd says (Hurd on Hab. Corp., 244), that the writ "deals with present restraints upon the living corporeal man, and it demands his presence before the court face to face with his jailer." (See also *Commonwealth* v. *Chandler*, 11 Mass., 83.)

Whatever may be the special characteristic of the restraint, however effected or imposed, it must at least be substantial and real.

Mere moral restraint will not do. It should be of such a tangible nature that the court may properly say to the respondent, except in cases of sickness or infirmity, " You *can* bring the body here, if you choose." In this case, Lampert, as we have seen, was not in the actual custody of the sheriff. In contemplation of law, he had been delivered into the custody *of his bail.* (*Metcalf* v. *Stryker*, 31 N. Y., 257.) The sheriff could not have compelled the relator to accompany him before the court. To obey, he would first have had to seek for and find the relator, and then take him into his custody. This seems like a satire upon the writ. The sheriff very properly returned that the relator was upon the limits, and that he could not produce him. Lampert then produced himself. Thus, stripped of irrelevant matters, the relator's attitude amounts to about this. He presents himself to the court upon a writ of *habeas corpus,* complaining that he is not legally free to leave the city of New York, and substantially praying that the area of his liberty may be enlarged. There is no precedent for such a position. It is very different from such a case as that of *Martin* v. *Wood* (7 Wend., 132), where the object was not to test the main question, but simply to permit the party to appear personally before a justice, *without the limits,* in exoneration of his surety. There the writ was sustained from the analogy of the case to that of a defendant in custody, who may be brought up on *habeas corpus,* in order that he may be surrendered in discharge of his bail. SUTHERLAND, J., justified the writ *ex necessitate,* and likened it, in legal effect, to a *habeas corpus ad testificandum.*

But this is not the only objection to the proceeding. The office of the writ is to inquire into the jurisdiction of the court, or the validity of the process, but not into a mere matter of temporary privilege. The party, *eundo, morando, et redeundo,* was under the ægis of the court in which his case was pending. That court would have protected him in a summary way from any breach of his privilege. It is a common and very proper practice, for the sheriff to bring a party, claiming his privilege under such circumstances, at once before the court, from whose presence he has just retired, and have the question then and there settled. Such an application is *ex parte.* Notice need not be given to the attorney

of the party suing out the execution. (*Humphrey* v. *Cummings*, 5 Wend., 90 ; *Secor* v. *Bell*, 18 Johns., 52.) " If notice were required to be given," said SUTHERLAND, J., in the case first cited, " the privilege would be of no value to either the attorney or his client." The party may also move the court out of which the process issued. The well-settled practice is, to raise the question by such motion, or by the summary application referred to. The books are full of such motions, while in but two instances, that we have discovered, was *habeas corpus* resorted to. (*Squires' Case*, 12 Abb. Pr., 38 ; *Hardenbrook's Case*, 8 Id., 416.) In the former, however, a general privilege from arrest was claimed, which, in effect, went to the validity of the process ; while in the latter, the question was not raised, and the prisoner was remanded on other grounds.

The propriety of raising such questions by motion, and the inconvenience which would attend so unusual and unnecessary a resort to the writ, is obvious. The question of temporary privilege is purely collateral. The process itself may be entirely valid, the right to re-arrest absolute and unqualified. Whether the prisoner shall be discharged *for the moment* depends upon a variety of considerations. Did he claim his privilege ? Did he waive it ? Did he lose it by deviating from his route ? Had it terminated ? How unfitting that this great writ should be invoked for the solution of such questions. And where is it to end ? If the privilege of suitors may be thus asserted and defended, why not the right to freedom, of one who has been enticed within the jurisdiction for the purpose of an arrest ? Why, in fact, may not all collateral matters, upon which the question of holding the arrest depends, be similarly litigated ? It would be but one step further thus to withdraw even the consideration of the merits from the court in which the cause is pending, and to place it in the hands of an officer exercising the functions of a former Supreme Court commissioner ; to permit an inquiry in this manner, for instance, into the validity of an order of arrest issued without a proper undertaking, or upon insufficient affidavits.

These considerations are really in the interest of the unlawfully arrested suitor. We have seen, that if he be entitled to his privilege, he may be discharged upon a summary application, *ex parte*.

That, however, is impossible if he resort to the writ, for under 2 R. S., 569, § 46, notice to the plaintiff in the execution, or his attorney, is a pre-requisite to the discharge. This provision for "the like notice of the time and place at which such writ shall have been made returnable, as is required to be given of special motions," indicates very clearly that it was not intended to grant the privilege of the writ, where there was a remedy by summary application without notice. Further, the entire scope of the act favors this view. Section 22 provides that persons detained by virtue of any execution, issued upon the final judgment of a competent tribunal, of civil or criminal jurisdiction, shall not be entitled to prosecute the writ. Under section 25, the petition must state that the person is not detained under any such execution, and, under section 40, the party must be remanded, if it shall appear that he *is* so detained.

Section 41 specially details the cases where the prisoner is to be discharged; but we find therein no reference to such a case as the present, nor provision for any *merely irregular arrest, under lawful and valid process*. The prisoner is to be discharged only (1) when the court has exceeded its jurisdiction; (2) where the original imprisonment was lawful, yet by some subsequent act, omission or event the party has become entitled to his discharge; (3) where the process is defective; (4) where it has been issued in a case not allowed by law; (5) when it is unauthorized; (6) where the prisoner is not in the hands of the proper custodian. This would seem to be decisive of the present case.

But there is still another pertinent provision of the statute, and that is, as to the effect of *a discharge* upon *habeas corpus*. The prisoner is not to be again arrested for "*the same cause.*" (§ 59.) Now, in the case at bar, what is "*the cause*"? Of course the facts which justified the execution. The court below, following the statute, released Lampert *from the execution*, and *from all imprisonment in pursuance thereof*, whether resulting from a surrender of bail or otherwise. Thus Lampert could not be rearrested on the execution. The effect, therefore, of this discharge on *habeas corpus*, because of a breach of the suitor's privilege, would be to deprive the plaintiff of his undoubted right to rearrest so soon as the privilege had terminated. (See *Humphrey* v. *Cumming*,

*supra.*)    The court below did not define "the cause" of the imprisonment as the disregard of the relator's privilege, and release him specifically from *that* cause, without prejudice to the *main* cause, to wit, the execution.    In this view the court was borne out by what follows in the act; for it is declared that it shall not be deemed "the same cause" if, "in a civil suit, the party has been discharged for *any illegality in the judgment or process* hereinbefore specified, and is afterwards imprisoned by legal process for the same cause of action." (§ 59, subd. 3.)    How natural it would have been, if really meant, to have added, "if, in a civil suit, the party has been discharged for any *illegality in making the arrest* upon a valid judgment and execution."    We think it quite clear, therefore, that the statute never contemplated a discharge upon such a collateral ground as that now under consideration, and that the proceedings below were without jurisdiction and void.

Were the merits to be inquired into, it would not be difficult to show a failure to claim the privilege in a proper manner; nor can there be any reasonable doubt that there was a waiver.    There does not appear to be a particle of evidence that either the plaintiff in the execution, or his attorney, specially directed this arrest.    There was, consequently, nothing to warrant the imposition of costs against the attorney personally.    The conclusion at which we have arrived renders it unnecessary to consider the second order appealed from, viz., that as to the sheriff's fees.

Both upon the law and the facts, we think the orders appealed from should be reversed, with costs, and the *habeas corpus* proceedings dismissed, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Order reversed, with costs, and the *habeas corpus* proceedings dismissed, with costs.